IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

        Plaintiff-Respondent,

v.                                                                CIV No. 19-0976 JCH/KBM
                                                                  CR No.  16-1432 JCH/KBM

MANUEL RUIZ,

        Defendant-Movant.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Magistrate Judge's Proposed Findings of

Fact and Recommended Disposition ("PF&RD") (*CV Doc. 8*[1]), filed May 5, 2020. In 2019,

Defendant/Movant Manuel Ruiz ("Mr. Ruiz") was convicted in this Court of unlawfully,

knowingly, and intentionally distributing methamphetamine in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(C). *CR Docs. 104*; *133*. Thereafter, he initiated a federal habeas action,

filing a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by Person in

Federal Custody ("Section 2255 Motion") and a Motion for Evidentiary Hearing and

Appointment of Counsel. *CR Docs. 136*; *140*.

  As the Magistrate Judge outlined in her PF&RD, Mr. Ruiz asserts that his trial counsel,

Ahmad Assed, rendered ineffective assistance when: (1) he advised Mr. Ruiz to plead guilty and

failed to engage in plea negotiations; (2) he estimated Mr. Ruiz's applicable sentencing guideline

range; (3) he failed to apprise Mr. Ruiz of a proposed plea agreement offered by the United

---

[1] Citations to "CV Doc." refer to documents filed in Civil Case No. 19-0976 JCH/KBM. Citations to "CR Doc." refer to documents filed in the attendant criminal docket in Criminal Case No. 16-1432 JCH.

States; and (4) he failed to advance arguments for departure or variance to the sentencing court. *CV Doc. 8* at 12-29 (citing *CR Docs. 136* at 4-7; *140* at 2-4). Mr. Ruiz also asserts a claim that the sentencing court abused its discretion in imposing his sentence. *Id*. at 29 (citing *CR Doc. 136* at 4). Concluding that no evidentiary hearing was necessary because the record conclusively established that Mr. Ruiz was not entitled to relief, the Magistrate Judge recommended that the Court deny each of these claims and dismiss Mr. Ruiz's Section 2255 case with prejudice. *Id*. at 31.

## I.   **Background**

Mr. Ruiz filed his first round of Objections to the Magistrate Judge's PF&RD on May 26, 2020. *CV Doc. 9*. He asserts therein that he was not served with the United States' Response to his Section 2255 Motion, maintaining that "the very first inkling of [the] response . . . was noted in the [PF&RD] by Judge Molzen which was put in [his] hands by [a] prison official on Thursday 14ᵗʰ of May 2020." *Id*. at 3. The Magistrate Judge ordered the United States to file its Response to Mr. Ruiz's Section 2255 Motion in Civil Case 19-0976 JCH/KBM, as the docket revealed that the pleading was previously only filed in Mr. Ruiz's related Criminal Case, 16-1432 JCH/KBM. *CV Doc. 10*. In addition, the Magistrate Judge ordered the United States to serve its Response on Mr. Ruiz at his mailing address of record. *Id*. The United States complied, filing both its Response and a Certificate of Service, which showed that it had served Mr. Ruiz. *See CV Docs. 11*; *12*. The Magistrate Judge gave Mr. Ruiz 14 days to file a reply in support of his Section 2255 Motion and gave the United States a separate deadline for its response to Mr. Ruiz's Objections to the PF&RD. *CV Doc. 10*. The Magistrate Judge clarified that the presiding

District Judge would consider both Mr. Ruiz's reply and his objections as well as any responses thereto. *Id.*

Instead of filing a reply in support of his Section 2255 Motion, Mr. Ruiz filed a document entitled "Motion to Object," which addresses the United States' Response to his Section 2255 Motion and makes objections to the Court's PF&RD. *See CV Doc. 13*. The United States sought clarification from the Court, suggesting that Mr. Ruiz's Motion to Object was more akin to a supplemental objection than a reply and requesting leave to file a single response to Mr. Ruiz's filings. *See CV Doc. 14*. The Magistrate Judge granted the United States' motion and provided new deadlines for a single response from the United States and a single reply from Mr. Ruiz. *CV Doc. 15*. The United States filed its response on June 22, 2020 (*CV Doc. 16*), and Mr. Ruiz filed his reply on July 10, 2020 (*CV Doc. 19*). The Court considers each of the above-mentioned filings in its *de novo* review of Mr. Ruiz's Objections and the Magistrate Judge's PF&RD.

## II.   <u>Legal Standard</u>

When a party files timely objections to a magistrate judge's recommendations, the district court must conduct a *de novo* review of the portion objected to and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). *De novo* review requires the district judge to consider relevant evidence of record and not merely to review the magistrate judge's recommendations. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995). "A party's objections to the magistrate judge's [PF&RD] must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).

III.   **Analysis**

    **A.  Due Process Claim**

    In his May 26, 2020 Objections, Mr. Ruiz asserts that his due process rights were violated because he did not receive the United States' Response to his Section 2255 Motion. *See CV Doc. 9.* Mr. Ruiz has since been served with the United States' Response, however, and has had adequate opportunity to respond to the contentions therein. *See CV Docs. 10-13.* In his June 8, 2020 Motion to Object Mr. Ruiz acknowledges his receipt of the United States' Response to which he objects in its entirety. *Doc. 13* at 1. Accordingly, Mr. Ruiz's due process claim is rendered moot and will be dismissed.

    **B.  Ineffective Assistance of Counsel Claims**

    Scattered throughout Mr. Ruiz's Objections and Reply are various claims that Mr. Assed rendered ineffective assistance of counsel, both at the plea stage and at sentencing. *CV Docs. 9*; *13*; *19.* Some of these claims Mr. Ruiz previously asserted in his Section 2255 Motion; some he has modified and reasserted; and some are entirely new claims. The United States responds to the varied claims in its single response to Mr. Ruiz's post-PF&RD filings. *See CV Doc. 16.*

        *i.   Alleged Ineffectiveness in Advising Mr. Ruiz to Plead Guilty*

    Mr. Ruiz reasserts his claim that Mr. Assed failed to adequately advise him as to the advantages and disadvantages of pleading guilty to drug trafficking. *CV Doc. 9* at 6. Although Mr. Ruiz ultimately pled to an Information, he was initially charged in an Indictment. *See CR Doc. 2.* The Indictment, as written, charged Mr. Ruiz with violating 21 U.S.C. §§ 841(a)(1) and

**(b)(1)(C)**. *See id*. But the United States explains that, but for a clerical error, Mr. Ruiz would have been charged with violating 21 U.S.C. § 841**(b)(1)(B)**. *CR Docs*. *117* at 13; *125* at 1. According to the United States, it notified defense counsel prior to Mr. Ruiz's guilty plea that it intended to "supersede the indictment and correct the error contained therein." *CR Doc. 6* at 7 n.1.

As the Magistrate Judge explains in her PF&RD, the record supports the United States' position that Mr. Ruiz was charged with violating § 841(b)(1)(C) by mistake. *CV Doc*. 8 at 13. The Indictment itself referenced *both* § 841(b)(1)(B) and § 841(b)(1)(C) in a contradictory fashion. *See CR Doc. 2*. Mr. Ruiz acknowledges in his habeas filings that Mr. Assed alerted him that his initial Indictment contained a typographical error. *See*, *e.g*., *CR Doc. 140* at 2. Further, throughout Mr. Ruiz's underlying criminal case, Mr. Assed regarded the charges against Mr. Ruiz to include a violation under § 841(b)(1)(B), despite the Indictment's reference to § 841(b)(1)(C). *See CR Doc. 125* at 1.

The superseding indictment contemplated by the United States would have elevated Mr. Ruiz's charges and increased his potential penalties to include a five-year statutory minimum. *Compare* § 841(b)(1)(B), *with* § 841(b)(1)(C). Following "negotiations with defense counsel," however, Mr. Ruiz was permitted to plead guilty to the Information that charged a violation of § 841(b)(1)(C), a C-level offense, and thereby avoid the more severe penalties that would have been triggered by a B-level conviction. *See Docs*. *104*; *107*; *117*. The Information also removed the aiding and abetting charge originally charged in Mr. Ruiz's Indictment. *Compare CR Doc. 2*, *with CR Doc. 104*.

At his Change of Plea Hearing, Mr. Ruiz testified before the Honorable Jerry H. Ritter that he understood that he was facing a term of imprisonment of up to 20 years for a violation of § 841(b)(1)(C). *CR Doc. 117* at 13-14. He also assured Judge Ritter that he was satisfied with the advice and representation of Mr. Assed. *Id*. at 16.

Against this backdrop, Mr. Ruiz contends that Mr. Assed provided ineffective assistance of counsel when he advised Mr. Ruiz to plead to the Information. But the Court is satisfied, just as the Magistrate Judge was, that Mr. Assed's advice to plead to the C-level Information was objectively reasonable. In short, by pleading guilty to the Information, Mr. Ruiz avoided more the severe potential penalties under a B-level superseding indictment as well as the additional aiding and abetting charge including in his initial Indictment. As such, Mr. Ruiz fails to overcome the presumption of adequate assistance. He also fails to articulate any prejudice suffered by virtue of his guilty plea, and his claim fails for that reason as well. *See CV Doc. 8* at 15. Mr. Ruiz's objections as to this claim are overruled.

### ii.  *Alleged Ineffectiveness in Coercing Guilty Plea*

In his June 8, 2020 Objections, Mr. Ruiz goes further, suggesting that his guilty plea was not only ill-advised but also *coerced* by Mr. Assed. *CV Doc. 13* at 1. The Magistrate Judge determined in her PF&RD that the colloquy at Mr. Ruiz's plea hearing assured that he understood that the sentencing court was not bound to impose a specific sentence and could impose a higher sentence than his attorney estimated. *CV Doc. 8* at 16. She observed that Mr. Ruiz nevertheless proceeded with his guilty plea, and she specifically noted that he had not alleged that he was threatened or coerced into pleading guilty. *Id*. Mr. Ruiz's Motion to Object followed, and he asserted for the first time that he *was* coerced into pleading guilty. *See CV Doc.*

6

*13* at 1. More specifically, Mr. Ruiz contends that he was "coerced by counsel to acknowledge under oath the sworn statements conclusive [sic] established at his hearing, under the assumption that [he] . . . would have received time served at sentencing for such-reason for the government not providing a declaration from Mr. Assed (counsel)." *Id.*

Yet, Mr. Ruiz's sworn statements to Judge Ritter at his Change of Plea Hearing demonstrate a knowing and voluntary decision to enter his guilty plea. After being sworn,[2] Mr. Ruiz acknowledged that if he failed to tell the truth, he could be charged with perjury. *CR Doc. 120*, Ex. 1, at 6. He advised Judge Ritter that he had sustained a previous head injury but assured the Judge that he was comfortable proceeding and would alert the Court if he became uncomfortable. *Id.* at 7. For his part, Mr. Assed told Judge Ritter that he believed "with certainty" that Mr. Ruiz could give responses based on "competent thinking." *Id.* at 8. Mr. Assed explained that Mr. Ruiz had experienced some difficulty recalling the events that served as the basis for his guilty plea but that with the assistance of available evidence, including audio recordings, videos, and photographs of Mr. Ruiz participating in the subject drug transaction, Mr.

---

[2] Mr. Ruiz makes a confusing argument regarding the timing of the administration of his oath at his plea hearing. He suggests that the oath was not administered until after Judge Ritter asked whether he had been threatened, pressured or coerced, such that "there was no contract by any sworn statement within the plea colloquy." *CV Doc. 19* at 2. This argument by Mr. Ruiz is neither accurate nor viable. The transcript of the plea hearing reveals that, prior to administering the oath, Judge Ritter questioned Mr. Ruiz concerning two previously-signed forms: the Consent to Appear Before a United States Magistrate Judge in a Felony Case form and the Waiver of Indictment form. *See CR Doc. 120*, Ex. 1, at 2-4. Before being sworn, Mr. Ruiz simply reported to Judge Ritter that he had not been subject to threats or pressure at the time he signed these forms. *See id.* After Mr. Ruiz was sworn, Judge Ritter circled back to the issue of the waiver of grand jury indictment and asked Mr. Ruiz, now under oath, whether he understood that he was giving up that right. *Id.* at 11-12. Mr. Ruiz responded that he did. *Id.* at 12. Mr. Ruiz does not now assert that he was coerced into proceeding before a Magistrate Judge or into waiving a grand jury indictment in favor of an Information. Instead, he suggests that his guilty plea was coerced by Mr. Assed. There is no question that Judge Ritter administered the oath to Mr. Ruiz *before* Mr. Ruiz pled guilty to the Information and *before* Judge Ritter questioned him concerning the voluntariness of that plea. *See id.* at 6, 11-16.

Ruiz was comfortable pleading guilty. *Id*. at 9. Likewise, Mr. Ruiz testified that, based on the evidence he reviewed, it was proper for him to go forward with the guilty plea. *Id*. at 20-21.

Before accepting Mr. Ruiz's guilty plea, Judge Ritter again asked Mr. Ruiz whether he was "comfortable going forward with [his] change of plea," to which Mr. Ruiz responded that he was. *Id*. at 10. Mr. Ruiz informed the Court that he wished to plead guilty and that no one had forced or threatened him to do so. *Id*. at 11. He testified that no one had promised him anything in exchange for his guilty plea. *Id*. He also told the Court that he understood the possible penalties he was facing, including a term of imprisonment of up to 20 years, and that he recognized that his attorney's sentencing predictions could turn out to be incorrect. *Id*. at 13-14. Mr. Ruiz expressed satisfaction with the advice and representation of his attorney. *Id*. at 16. Judge Ritter ultimately found Mr. Ruiz "competent and capable of entering an informed plea" and "aware of the nature of the charge and the consequences of his plea." *Id*. at 22. Accordingly, he determined that Mr. Ruiz's guilty plea was both knowing and voluntary. *Id*.

Mr. Ruiz's plea colloquy is instructive in evaluating the voluntariness of his plea. After all, "[s]olemn declarations in open court carry a strong presumption of verity," and "[a] defendant's statements at a plea hearing 'should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth' of those statements." *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975)).

Mr. Ruiz does little to develop his coercion argument other than to suggest that "[i]t was obvious that Assed coerced his client and misled the court during the plea hearing, without any

8

attempt[] to investigate and/or challenge to the information used against his client." *CV Doc. 19* at 2. Having reviewed the transcript of the plea hearing, however, the Court disagrees with Mr. Ruiz's assessment. There are no obvious signs that Mr. Assed coerced or misled Mr. Ruiz. Even a mistaken prediction of a time-served sentence would not alone render Mr. Ruiz's plea involuntary. *See Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (citing *Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)). Further, Judge Ritter's discussion with Mr. Ruiz would have alerted Mr. Ruiz that he could be facing up to 20 years in prison for a conviction under § 841(b)(1)(C). *See CR Doc. 120*, Ex. 1, at 13-14.

The Court finds that Mr. Ruiz has failed to demonstrate that his guilty plea was coerced, and Mr. Ruiz's objection to the contrary is overruled.

### iii. Alleged Ineffectiveness in Advising Mr. Ruiz as to Relevant Conduct

Next, Mr. Ruiz offers a slightly nuanced ineffectiveness claim involving relevant conduct. He maintains that Mr. Assed failed to properly advise him at the plea stage, because he neglected to inform him that drug quantities attributable to Kirk Castor might also be attributed to him as relevant conduct. *CV Doc. 9* at 8. He insists that had he been so advised, he would "not have agreed to such an outcome and would have been strongly inclined to exercise his constitutional right to trial by jury." *Id.* But this claim also fails.

Significant misunderstandings underly Mr. Ruiz's position. First, although Mr. Ruiz maintains that, properly informed, he would not have "agreed to such an outcome," the record reveals that there were no agreements between the parties concerning Mr. Ruiz's sentencing. The United States admits that it offered the plea agreement to which Mr. Ruiz refers, but it insists that Mr. Ruiz rejected that agreement. *CV Doc. 16* at 2. In support, the United States supplies e-mail

9

communications between counsel, which suggest that the inclusion of a term requiring Mr. Ruiz to consent to his removal from the United States was a "deal breaker" for Mr. Ruiz. *See id.*, Ex. 1. The record confirms that, instead of accepting the plea agreement offered by the United States, Mr. Ruiz pled to the C-level Information without the benefit of any plea agreement. *See CV Doc. 16* at 1; *see also CR Docs. 104*; *107*; *117*.

Additionally, Mr. Ruiz misapprehends the effect of relevant conduct. He suggests that relevant conduct should not have been attributed to him, because he "was never involved in a conspiracy [and] never signed any agreement about any other attributed drug amount." *CV Doc. 13* at 2. Moreover, Mr. Ruiz maintains that because he only admitted participation in a March 30, 2016 controlled buy, he did not share responsibility for drug quantities exchanged in separate drug transactions with Mr. Castor. *See id.* at 2; *CV Doc. 19* at 4.

While it is true that these separate drug transactions were not charged in Mr. Ruiz's initial Indictment or in the Information to which he pled, this did not preclude the Court's consideration of drug quantities from relevant conduct at sentencing. Drug quantities are calculated pursuant to § 1B1.3(a)(2) and § 3D1.2(d) of the United States Sentencing Guidelines. *United States v. Barela*, 973 F.2d 852 (10th Cir. 1992). Section 1B1.3(a) instructs courts to consider relevant conduct as follows:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B) in the case of a jointly undertaken criminal activity . . . all acts and omissions of others that were –
>> (i) within the scope of a jointly undertaken criminal activity,
>> (ii) in furtherance of that criminal activity, and
>> (iii) reasonably foreseeable in connection with that criminal activity;
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offense of a character for which § 3D1.2(d) would require grouping of multiple counts, *all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.*

U.S. Sentencing Guidelines Manual § 1B1.3(a) (U.S. Sentencing Comm'n 2015) (emphasis added). The application notes to § 1B1.3 clarify that if a defendant is engaged in multiple drug transactions as part of the same course of conduct or common scheme or plan, the total quantity of drugs involved is used to determine the offense level, "even if the defendant is convicted of a single count charging only one of the sales." U.S. Sentencing Guidelines Manual § 1B1.3 application note 5 (U.S. Sentencing Comm'n 2015).

Here, Mr. Ruiz was placed on notice that his case was related to other drug trafficking cases by virtue of the United States' Notice of Related Cases, which was filed in his criminal case on May 18, 2016. *See CV Doc. 13.* The Notice specified that the "theories of prosecution, facts, evidence, defendants and witnesses" in the criminal cases against George Begay, Kirk Castor, Lewayne Dennison, and Miguel Rangel-Arce were common to those in the criminal case against him. *See id.* at 1. Accordingly, when Mr. Assed estimated Mr. Ruiz's guideline calculations, he accounted for drug quantities involved in relevant conduct, including drugs sold by Mr. Castor (i.e. 41.69 grams methamphetamine). *See CR Doc. 125* at 2. As for the plea agreement offered by the United States, it included a term requiring the government to recommend an offense level of 26, but it also recognized that relevant conduct would further increase Mr. Ruiz's offense level at sentencing. *See CV Docs. 5* at 10; *8* at 24. There is no indication that the United States extended any offer to Mr. Ruiz that would have removed relevant conduct as a sentencing consideration.

For all of these reasons, any expectation by Mr. Ruiz that the drug quantities sold by Mr. Castor were not attributable to him as relevant conduct at sentencing was unreasonable. Moreover, even if Mr. Ruiz could show that Mr. Assed neglected to advise him that additional drug quantities could be attributed to him as relevant conduct, he would not thereby demonstrate ineffective assistance of counsel. As the Magistrate Judge explained in her PF&RD, under Tenth Circuit law, defense counsel's failure to predict the inclusion of relevant conduct in a defendant's offense level at sentencing does not constitute ineffective assistance of counsel. *See CV Doc. 8* at 19 (citing *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)). Once again, Mr. Ruiz testified at his plea hearing that he understood he was facing a term of imprisonment of up to 20 years and that his attorney's sentencing estimate was merely a "prediction" that might prove incorrect. *CR Doc. 117* at 14. As such, he also fails to demonstrate prejudice. *See Gordon*, 4 F.3d at 1571 (reasoning that the defendant failed to show prejudice, where the trial court informed him that its "final calculation of [his] sentence may differ from any calculation made by his attorney").

In sum, even if the Court's inclusion of relevant conduct ultimately rendered Mr. Ruiz's sentence longer than he expected, Mr. Ruiz's unmet expectations do not render his plea constitutionally invalid or Mr. Assed's representation ineffective. *See id.* at 1570; *see also Gardner v. McKune*, 242 F. App'x 594, 597 (10th Cir. 2007). The Court overrules Mr. Ruiz's objections to the contrary.

### iv.  Alleged Ineffectiveness in Failing to Convey Plea Agreement

Mr. Ruiz contends, as he did in previous filings, that he was prejudiced when Mr. Assed failed to convey the plea agreement offered by the United States. *CV Doc. 13* at 2. For its part,

the United States suggests that it is "clear [Mr. Ruiz] was aware of the [plea agreement] offer, as he had a copy of the draft in his possession." *CV Doc. 16* at 2. But Mr. Ruiz persists in his argument, maintaining that he was not apprised of the proposed plea agreement until January 24, 2020, when he received post-judgment correspondence from Mr. Assed. *See CV Doc. 19* at 1. He contends that prior to entry of his guilty plea Mr. Assed chose to "veer a plea agreement which puts the government under a contract for the amount of drug original[ly] attributed-for an information complaint that added more drugs attributed from others." *CV Doc. 13* at 2. Mr. Ruiz suggests that if Mr. Assed had conveyed the proposed plea agreement prior to his guilty plea and had advised him to sign it, "the outcome would have been different." *Id.* He emphasizes that the proposed plea agreement omitted any reference to the 41.69 grams of methamphetamine sold by Kirk Castro. *See CV Doc. 19* at 1.

As discussed above, Mr. Ruiz misunderstands the effect of relevant conduct at sentencing. But, more importantly for purposes of this claim, he fails to show that he was prejudiced by counsel's alleged failure to convey the plea agreement. Put simply, he cannot demonstrate that he would have received a more favorable outcome if he had entered into the plea agreement. *See CV Doc. 8* at 26-27.

The terms of the plea agreement would have obligated Mr. Ruiz to plead guilty to a violation of 21 U.S.C. § 841(b)(1)(C), the same drug trafficking provision to which he ultimately pled. *Compare CR Doc. 140* at 7-16, *with CR Doc. 104*. And although the agreement would have obligated the United States to recommend a base offense level of 26, as discussed, it left open the possibility that drug quantities from Mr. Ruiz's relevant conduct would further increase his base

offense level. *See CR Doc. 140* at 7-16. Effectively, relevant conduct would have still been a consideration at Mr. Ruiz's sentencing, even if he had entered the plea agreement.

In addition, the plea agreement required concessions of Mr. Ruiz not required in its absence, including that he not seek a downward departure or variance from the applicable guideline range, that he waive his right to appeal his conviction and sentence, and that he consent to his removal from the United States at the conclusion of his prison term. *See CR Doc. 140* at 13-14. Correspondence provided by the United States and testimony at Mr. Ruiz's Change of Plea and Sentencing hearings suggest that the final term – consent to removal form the United States – was particularly troublesome for Mr. Ruiz. *See CV Doc. 16*, Ex. 1 (describing the requirement that Mr. Ruiz consent to removal from the United States as a "deal breaker"); *CR Doc. 120*, Ex. 1, at 22 (indicating that Mr. Ruiz had retained immigration counsel and intended to fight any negative immigration consequences); *CR Doc. 141* at 26-27 (describing deportation as "the worst thing that's probably going to happen" in his life.)

The Court agrees with the Magistrate Judge's conclusion that Mr. Ruiz cannot show a reasonable probability that, but for Mr. Assed's failure to adequately convey the proposed plea agreement, he would have received a more favorable sentence. As such, Mr. Ruiz's objection to the PF&RD's resolution of this claim is overruled.

v. ***Alleged Ineffectiveness in Conceding Relevant Conduct***

In his Objections, Mr. Ruiz also advances a new ineffective assistance theory concerning relevant conduct – that is, that Mr. Assed was ineffective when he conceded that drug quantities attributed to Mr. Castor could also be attributed to Mr. Ruiz. *CV Doc. 9* at 8-9. The United States

urges the Court to strike this new theory but, at the same time, goes on to address its merits. *See CV Doc. 16* at 4.

The Court overrules Mr. Ruiz's objection for two alternate reasons. First, "theories raised for the first time in objections to [a PF&RD] are deemed waived." *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001). Mr. Ruiz did not argue in his Section 2255 Motion that Mr. Assed was ineffective in conceding relevant conduct. Instead, he waited until he filed his Objections to do so, thereby waiving the argument. Second, the Court agrees with the United States that Mr. Ruiz's new theory is without merit.

Before sentencing, Mr. Assed argued that the United States Probation Office ("USPO") erroneously attributed to Mr. Ruiz certain drug amounts that were not part of the same course of conduct or common scheme or plan as the subject drug transaction, including quantities attributed to LeWayne Dennison and George Begay. *CR Doc. 125* at 4. In contrast, he conceded that the drug quantities attributed to Kirk Castor could be attributed to Mr. Ruiz as relevant conduct. *Id.* In so doing, Mr. Assed acknowledged that a "prior control[led] buy was arranged which involved Kirk Castor in which Mr. Castor was observed obtaining drugs from Mr. Ruiz and then providing them to a confidential source in Fruitland, NM." *Id.* at 5. It is this concession that Mr. Ruiz maintains was constitutionally deficient.

The United States articulates a more detailed factual basis for Mr. Castor's drug trafficking convictions as it relates to Mr. Ruiz. *See* CV *Doc. 16* at n.3. It explains that on April 1, 2015, an undercover officer and confidential informant ("CI") met with Mr. Castor to purchase methamphetamine. *Id.* Mr. Castor required payment up front and explained that he would go to his supplier's house to retrieve the drugs. *Id.* Later that evening, Mr. Castor

contacted the undercover officer and CI, explaining that he was on his way to his supplier's house. *Id*. He traveled to the residence of Mr. Ruiz. *Id*. Finding no one at home, however, Castor returned the money to the undercover officer. *Id*. Days later, on April 3, 2015, the undercover officer and CI again met with Mr. Castor to arrange a methamphetamine purchase. *Id*. Mr. Castor again collected a sum of money up front and advised that he was going to his supplier's house to obtain the methamphetamine. *Id*. He drove to Mr. Ruiz's residence, where he remained for approximately one hour and where he was seen with Mr. Ruiz entering a white shed. *Id*. Mr. Castor eventually left Mr. Ruiz's residence with a package in hand and drove to the location agreed upon with the undercover officer and CI, where he delivered 42 grams of methamphetamine. *Id*. Mr. Castor told the undercover officer and the CI that he had helped his supplier bury two pounds of methamphetamine. *Id*.

In the face of evidence showing Mr. Ruiz's involvement with drug transactions by Mr. Castor, Mr. Assed opted not to object to the inclusion of relevant conduct involving those drug transactions. *See CR Doc. 125* at 4-5. Instead, he focused his efforts on challenging other alleged relevant conduct as well as three sentencing enhancements sought by the United States. *See Docs. 6*; *11*. In the Court's view, this strategic decision was entirely reasonable.

In the Tenth Circuit, courts give considerable deference to an attorney's strategic decisions, recognizing that counsel is strongly presumed to have rendered adequate assistance and to have made decisions in the exercise of reasonable professional judgment. *See Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002). Here, the United States was positioned to make a strong showing that Mr. Ruiz participated in the drug transactions involving Mr. Castor and that they were part of a common drug trafficking scheme or plan. While it is true, as Mr. Ruiz

maintains, that information provided by the United States at sentencing must have sufficient indicia of reliability to support its probable accuracy, a sentencing court may consider the information presented by the United States even without regard to its admissibility. U.S. Sentencing Guidelines Manual § 6A1.3(a) (U.S. Sentencing Comm'n 2004).

Ultimately, Mr. Ruiz has failed to demonstrate that Mr. Assed's concession of relevant conduct involving Mr. Castor was constitutionally deficient. This new ineffective assistance claim asserted by Mr. Ruiz is without merit, and his objection fails.

### vi.  Alleged Ineffectiveness for Failing to Provide Psychological Assistance at Sentencing

Mr. Ruiz also asserts that Mr. Assed rendered ineffective assistance at sentencing when he failed to have "a psychologist present . . . to make sure[] he understood the proceedings to the fullest extent." *CV Doc. 13* at 1; *see also CV Doc. 19* at 4. Because Mr. Ruiz did not assert this claim in his Section 2255 Motion, and instead raised it for the first time in his Objections to the PF&RD, the claim is deemed waived. *See Garfinkle*, 261 F.3d at 1031 (10th Cir. 2001). Moreover, the claim lacks merit.

In the initial stages of Mr. Ruiz's criminal case, Mr. Assed sought an inpatient competency evaluation on Mr. Ruiz's behalf. *CV Doc. 8* at 3 (citing *CR Doc. 43*). When Jeremiah Dwyer, Ph.D. evaluated Mr. Ruiz on April 24, 2017, he suspected that Mr. Ruiz was malingering. *See CR Doc. 57*. He explained that "observations during the evaluation period, the results of the formal assessment measures concerning response style, and inconsistencies between reported deficits and observed conduct as reflected in the available records, provide a significant indication Mr. Ruiz may be attempting to present his cognitive functioning as lower that it actually is." *Id*. at 15. Ultimately, Dr. Dwyer concluded that he was unable to make a

17

formal diagnosis or assessment of Mr. Ruiz's competency, opining that "more comprehensive participation in the evaluation process would allow for more conclusive opinions." *Id*. at 24.

The Court transported Mr. Ruiz to a federal medical facility, where he was evaluated by Drs. Allissa Marquez, Ph.D. and Tracy Pennuto, Ph.D., J.D. *See CR Doc. 79*. These psychologists reported that, upon administering the Structured Inventory of Malingered Symptoms (SIMS), which they described as "a screening measure of exaggerated deficits in multiple areas of mental illness," Mr. Ruiz "produced a total score of 53, which breached the threshold for malingered responding *by an extraordinary amount*." *Id.* at 5 (emphasis added). Similarly, other tests suggested that Mr. Ruiz intentionally chose incorrect answers for the most difficult questions and feigned or exaggerated cognitive deficits. *Id*. at 6-9. Indeed, Mr. Ruiz "produced abnormal results on at least ten measures of functioning or feigning, all of which suggest[ed] inconsistent effort or attempts to exaggerate deficits." *Id*. at 13. According to Drs. Marquez and Pennuto, "ten elevated scores is overwhelming evidence of a feigned response." *Id*. They explained that the "degree of impairment displayed by Mr. Ruiz on prior and current testing [was] so severe that if taken at face value it would suggest that he is so disabled that he requires inpatient care or assisted living." *Id*. But, as they noted, his test scores stood "in stark contrast to his daily functioning observed by a range of staff at [his current] and prior facilities." *Id*. at 12. While Drs. Marquez and Pennuto conceded that it was "possible he may suffer from mild cognitive deficits" as a result of head trauma, they opined that it was "unlikely given [their ] review of the medical records[] and given Mr. Ruiz's functional level and presentation." *Id*. at 10. Most relevant to Mr. Ruiz's Section 2255 claims, Drs. Marquez and Pennuto concluded that Mr. Ruiz did not suffer from a mental impairment that rendered him unable to understand legal

proceedings or to assist in his defense. *Id*. at 19. Instead, they concluded that he met the criteria for a malingering diagnosis. *Id*. at 10.

Referring to these psychiatric evaluations at sentencing, the United States asked the Court to impose a sentencing enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and to decline Mr. Ruiz's requests for a departure or variance based upon a traumatic brain injury. *CR Doc. 141* at 29. Over Mr. Ruiz's objection, the Court determined that the enhancement was appropriate, explaining that Mr. Ruiz's actions appeared to be calculated, selective, and indicative of malingering. *Id.* at 49. Moreover, the Court explained that communications by Mr. Ruiz, including to his daughter, undermined his position that he was suffering from a significant mental impairment. *Id.*

Under these circumstances, the Court concludes that Mr. Ruiz cannot establish that Mr. Assed rendered ineffective assistance by failing to have a psychologist available to assist him at sentencing. Despite multiple psychiatric evaluations, there is no evidence to suggest that Mr. Ruiz suffered from a mental impairment that rendered him unable to understand legal proceedings or to assist in his defense. Indeed, the evidence demonstrates the opposite. *See CR Doc. 79* at 19. Moreover, the transcript from the sentencing hearing suggests that Mr. Ruiz was capable of comprehending what was taking place and was able to competently address the Court and express remorse for his criminal actions. *See, e.g*., *CR Doc. 141* at 25-27. The Court overrules Mr. Ruiz's objection and denies this claim of ineffective assistance.

### *vii. Alleged Ineffectiveness in Failing to Object to Psychiatric Evaluations*

Mr. Ruiz asserts an additional ineffectiveness claim related to his psychiatric evaluations. He maintains that a "psychiatric evaluation was used to enhance [his] sentence without counsel

objection to such and or challenge to the lack of live witness to confront about the damage of the skull fracture and traumatic brain injury." *CV Doc. 13* at 3; *see also CV Doc. 19* at 3. This, too, is a new claim not raised in Mr. Ruiz's Section 2255 Motion, which is deemed waived. *See Garfinkle*, 261 F.3d at 1031. The claim is similarly without merit.

Having examined the record, the Court is satisfied that Mr. Assed's objections to the obstruction of justice enhancement were adequate. Mr. Assed specifically objected to the obstruction enhancement, arguing that Mr. Ruiz's psychiatric evaluations did not demonstrate a willful attempt by him to provide false information. *CR Doc. 125* at 48-49.  Mr. Assed did not, however, present live testimony addressing Mr. Ruiz's head injury.  Yet, given multiple psychologists' opinions that Mr. Ruiz was malingering, it was entirely reasonable for him to not present such testimony. Because Mr. Ruiz fails to show that Mr. Assed's approach to resisting the proposed obstruction enhancement fell outside the wide range of professionally competent assistance, the Court overrules his objection and dismisses his claim.

### C.  Alleged Abuse of Discretion in Sentencing

Mr. Ruiz's final objection once again involves consideration of relevant conduct at sentencing. He asserts that this Court abused its discretion when it sentenced him to 121 months, because the government failed to prove by a preponderance of the evidence that Mr. Ruiz had a connection to the 41.69 grams of methamphetamine sold by Mr. Castro. *CV Doc. 13* at 3-4. Mr. Ruiz suggests that "the government's information was not sufficiently reliable to determine the drug quantity by a preponderance of the evidence through the threshold for a sufficient reliability." *Id.* at 3. But these arguments come too late.

Mr. Ruiz did not seek a direct appeal of his sentence. Instead, he sought relief from his sentence for the first time in this Section 2255 action. *See CR Doc. 136* at 2. The Tenth Circuit has determined that "a defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994) (citing *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)). This procedural bar extends to a federal defendant's collateral attack on his sentence. *Id.* When the government raises procedural bar, as the United States has here, the Court must enforce it, absent a showing of cause and prejudice or miscarriage of justice. *Id.*

As noted by the Magistrate Judge in her PF&RD, Mr. Ruiz has failed to articulate any cause for his procedural default, and he has likewise failed to demonstrate that a fundamental miscarriage of justice would occur should the Court not consider his sentencing arguments in the context of his Section 2255 Motion. Because he is barred from raising this sentencing claim in his Section 2255 action, the Court will overrule his objection and dismiss his claim.

IV.   **Conclusion**

Having conducted its *de novo* review, the Court concludes that Mr. Ruiz's Objections lack merit and that he is not entitled to relief on any of the grounds asserted in his Section 2255 Motion.

Wherefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Petitioner's Objections to the Proposed Findings of Fact and Recommended Disposition (CV *Docs. 9*; *13*; *19*) are **OVERRULED**;

2.  The Magistrate Judge's Proposed Findings of Fact and Recommended Disposition (*CV Doc. 8*) is **ADOPTED**;

3.  Manuel Ruiz's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (*CV Doc. 1*; *CR Doc. 136*) is **DENIED**;

4.  Manuel Ruiz's Motion for Evidentiary Hearing and Appointment of Counsel (*CV Doc. 5*; *CR Doc. 140*) is **DENIED**;

5.  This action is **DISMISSED** with prejudice;

6.  For the reasons stated in the Magistrate Judge's PF&RD and this order adopting those findings, Petitioner has failed to make a substantial showing of a denial of a constitutional right. Therefore, a certificate of appealability is **DENIED**;

7.  A Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure will be entered dismissing this action with prejudice.


SENIOR UNITED STATES DISTRICT JUDGE